129 Nev., Advance Opinion 55

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| THE STATE OF NEVADA, Appellant, vs. RICARDO ROBLES-NIEVES, Respondent. | No. 61537 **FILED** JUL 25 2013  |

Motion for a stay of trial court proceedings pending resolution of an appeal from an order granting a motion to suppress evidence.

*Motion granted.*

Catherine Cortez Masto, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Steven S. Owens, Chief Deputy District Attorney, Clark County,
for Appellant.

David M. Schieck, Special Public Defender, and Robert Arroyo, Deputy Special Public Defender, Clark County,
for Respondent.

BEFORE THE COURT EN BANC.

## OPINION

By the Court, HARDESTY, J.:

Respondent Ricardo Robles-Nieves is in custody awaiting trial on a charge of murder with the use of a deadly weapon. He successfully litigated a pretrial motion to suppress his incriminating statement to

13-21923

police based on a claim that his statement was procured through the use of extrinsic falsehoods. While this court has adopted a rule concerning the use of intrinsic falsehoods in eliciting a confession, the issue of the coercive effect of using extrinsic falsehoods is an issue of first impression in Nevada.

Faced with going to trial absent a key piece of evidence, the State exercised its statutory right to appeal from the order granting the motion to suppress. After several continuances and considering Robles-Nieves' repeated assertion of his speedy-trial rights, the district court set a trial date and denied the State's request to stay the trial pending resolution of its appeal. The State then renewed its motion with this court.

The State's motion provides the opportunity to address the factors that govern our discretionary decision on a motion for a stay in a criminal proceeding. We conclude that the four factors that govern our exercise of discretion in ruling on a stay motion in a civil proceeding under NRAP 8(c) are relevant to our exercise of discretion to grant a stay of a criminal proceeding pending resolution of an interlocutory suppression appeal. Those factors are: (1) whether the object of the appeal will be defeated if the stay is denied, (2) whether the appellant will suffer irreparable or serious injury if the stay is denied, (3) whether the respondent will suffer irreparable injury if the stay is granted, and (4) whether the appellant is likely to prevail on the merits in the appeal. In the context of an interlocutory suppression appeal, the first factor is the most significant because the appeal will be rendered moot and the State's right to appeal effectively eliminated if the trial proceeds. In that context, the third factor also is significant and may require consideration of the

defendant's speedy-trial rights where the defendant has asserted those rights and opposed the motion for a stay. Having considered the relevant factors, we conclude that they weigh in favor of granting a stay in this instance.[1]

## DISCUSSION

The State has not always had the right to appeal from an order granting a motion to suppress evidence. *See* 1967 Nev. Stat., ch. 523, § 287, at 1443-44 (adopting NRS 177.015 without provision for interlocutory appeal from an order resolving a motion to suppress evidence); *see also State v. Pearce*, 96 Nev. 383, 609 P.2d 1237 (1980) (observing that the Nevada Legislature gave the State the right to file an interlocutory appeal from an order granting a motion to suppress evidence in 1971 but then deleted the provision the following legislative session); *Cook v. State*, 85 Nev. 692, 694-95, 462 P.2d 523, 526 (1969) (observing that interlocutory appeal from trial court's ruling on motion to suppress evidence "is not authorized"). Part of the concern with affording the State the right to such an interlocutory appeal was that it would cause delay that would impede the defendant's right to a speedy trial. *See Cook*, 85 Nev. at 695, 462 P.2d at 526 ("An interlocutory appeal from the trial court's ruling on . . . a motion [to suppress evidence] is not authorized because of attendant delay and the desire to avoid the piecemeal handling

---

[1]We granted the motion and stayed the trial in an order entered on June 10, 2013. Although time constraints prevented us from explaining our decision in a formal opinion at that time, we explained in our order that a formal opinion, setting forth the grounds for our decision, would be forthcoming. *Cf. Indep. Am. Party v. Lau*, 110 Nev. 1151, 1153 n.3, 880 P.2d 1391, 1392 n.3 (1994).

of cases."); *Franklin v. Eighth Judicial Dist. Court*, 85 Nev. 401, 404, 455 P.2d 919, 921 (1969) ("Piecemeal review does not promote the orderly handling of a case, and is particularly disruptive in criminal cases where the defendant is entitled to a speedy resolution of the charges against him."). In 1981, the Nevada Legislature adopted NRS 177.015(2), which grants the State the right to appeal to this court from a district court's pretrial order granting a motion to suppress evidence. 1981 Nev. Stat., ch. 702, § 1, at 1706.

In addition to authorizing an interlocutory appeal from an order granting a suppression order, NRS 177.015(2) expressly authorizes this court to "enter an order staying the trial for such time as may be required" if the court decides to entertain the State's appeal or if a stay "otherwise appears necessary." Providing for a stay makes sense given the timing of pretrial suppression motions. Under NRS 174.125(1), motions to suppress evidence generally must be filed before trial and, in the largest judicial districts in this state, the motion may be filed as little as 15 days before the trial date, NRS 174.125(3)(a). Because the motion may be filed such a short time before trial, it is not unreasonable to expect that a stay would be needed if the State exercises its right to an interlocutory appeal from an order granting the motion. Although NRS 177.015(2) acknowledges this situation by allowing for a stay, it does not identify any factors that are relevant to the court's exercise of its discretion to stay the trial. In that void, we turn to Rule 8 of the Nevada Rules of Appellate Procedure, which addresses requests to stay proceedings while an appeal is pending.

Unfortunately, Rule 8 has little to say about stays in criminal cases beyond the procedural requirements for filing the motion such as

pursuing relief in the district court in the first instance (which the State did in this case) and what must be included in the motion. NRAP 8(a)(1), (2). When it comes to stays in criminal cases in particular, the rule simply refers to NRS 177.095 and unidentified statutes following it. NRAP 8(e). Those statutes, however, similarly have little to say beyond authorizing or mandating stays in certain circumstances. None of the statutes that provide discretionary authority to grant a stay identify factors that should govern the exercise of that discretion. *See, e.g.*, NRS 177.115; NRS 177.125.

In contrast, Rule 8(c) provides specific factors to be considered when a stay motion has been filed in a civil appeal. Those factors are: (1) whether the object of the appeal will be defeated if the stay is denied, (2) whether the appellant will suffer irreparable or serious injury if the stay is denied, (3) whether the respondent will suffer irreparable or serious injury if the stay is granted, and (4) whether the appellant is likely to prevail on the merits in the appeal. NRAP 8(c). The parties seem to agree that these factors should guide the decision whether to grant a stay under NRS 177.015(2). Because the factors set forth in NRAP 8(c) allow us to take into consideration the interests of both the prosecution and the defense and the legislative concern about delay that is reflected in the short appeal period (two days for filing a notice in the district court and five days for filing a separate notice in this court), *State v. Loyle*, 101 Nev. 65, 67, 692 P.2d 516, 518 (1985) (Steffen, J., dissenting) (discussing the reason for the short appeal period in NRS 177.015(2)), we will look to those factors in deciding whether to grant a stay under NRS 177.015(2).

We have not ascribed particular weights to any of the stay factors in the civil context, but we have recognized that depending on the

type of appeal, certain factors may be especially strong and counterbalance other weak factors. *Mikohn Gaming Corp. v. McCrea*, 120 Nev. 248, 251, 89 P.3d 36, 38 (2004). Our stay analysis in the context of an appeal from an order granting a motion to suppress evidence necessarily reflects the interlocutory nature of the appeal and the concerns about delay that are implicit in NRS 177.015(2). Accordingly, the first and third factors take on added significance in our stay analysis.

*Object of the appeal*

The parties do not seriously dispute the first factor—whether the object of the State's appeal will be defeated if the stay is denied. The object of the State's appeal is to have the confession available for use at trial. If the stay is denied, that object will be defeated as the trial will proceed without the suppressed evidence. The Legislature has provided for an interlocutory appeal of an order granting a motion to suppress evidence, NRS 177.015(2), which demonstrates the intent to secure review of an order suppressing evidence before trial. If the trial proceeds while the appeal is pending, the State will lose the opportunity for that review. We therefore conclude that this factor weighs heavily in favor of a stay.

*Irreparable or serious harm if stay is denied*

The second factor is the subject of some dispute—whether the State will suffer irreparable or serious injury if the stay is denied. The State argues that it will be injured if the trial proceeds because its case is not as strong without that evidence and Robles-Nieves may be acquitted as a result. Robles-Nieves suggests that the State will not be harmed because even if it succeeds on some level in this appeal, the district court likely will grant the motion again on other grounds and therefore the State will still be faced with proceeding to trial without the suppressed

evidence. Both arguments are somewhat speculative. But based on the information provided to this court, it appears that the State's case absent the suppressed evidence is circumstantial at best and the suppressed evidence is particularly probative of Robles-Nieves' guilt. Considering those circumstances, the seriousness of the charged offense, and the absence of any recourse for the State if Robles-Nieves is acquitted, we conclude that this factor weighs in favor of a stay.

*Irreparable or serious harm if stay is granted*

The third factor we must consider is whether Robles-Nieves will be irreparably harmed if the stay is granted. Robles-Nieves offers two arguments: he will remain incarcerated unnecessarily based on a coerced confession, and the delay will infringe his speedy-trial rights. The first argument is somewhat relevant but not controlling in this case since denying the stay would not result in Robles-Nieves' immediate release.[2] The second argument gets to the heart of this factor as the Legislature clearly was concerned about the impact that interlocutory appeals under NRS 177.015(2) would have on the defendant's speedy-trial rights. *See Loyle*, 101 Nev. at 67, 692 P.2d at 518 (Steffen, J., dissenting) (observing that NRS 177.015(2)'s "short [appeal period] reflects a concern for preserving the right to speedy trials for defendants who have successfully moved to suppress evidence"). Because this presents a significant issue, we take this opportunity to provide some guidance on the relationship between a defendant's speedy-trial rights and a stay during an

---

[2]It is not entirely clear from the documents before us, but it appears that Robles-Nieves remains in custody at least in part because he is subject to an immigration hold.

interlocutory appeal under NRS 177.015(2). There are two speedy-trial rights at issue: the constitutional right protected by the Sixth Amendment and a statutory right to a trial within 60 days of arraignment under NRS 178.556(1). We address the constitutional right first.

*Irreparable harm based on constitutional right to speedy trial*

The United States Supreme Court has adopted a four-part balancing test to determine whether continuances have infringed on a defendant's constitutional right to a speedy trial: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The four factors are "related" and "must be considered together with such other circumstances as may be relevant." *Id.* at 533. The United States Supreme Court has applied the same test "to determine the extent to which appellate time consumed in the review of pretrial motions should weigh towards a defendant's speedy trial claim." *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986). We similarly conclude that these factors are relevant when considering whether a stay during an interlocutory appeal under NRS 177.015(2) will irreparably harm the defendant by infringing on his constitutional right to a speedy trial.

The first speedy-trial factor—length of the delay—is "a triggering mechanism." *Barker*, 407 U.S. at 530. "[T]here must be a delay long enough to be 'presumptively prejudicial.'" *Loud Hawk*, 474 U.S. at 314 (quoting *Barker*, 407 U.S. at 530). Here, Robles-Nieves was arrested on the charges on November 23, 2011. Thus far, he has been held approximately 18 months; just over 12 months since his arraignment. Of that time, approximately 8 months is attributable to this appeal (starting

from October 17, 2012—the date that the district court first granted a continuance based on the appeal).

Under the second speedy-trial factor—the reason for the delay—different reasons are assigned different weights. *Barker*, 407 U.S. at 531. For example, if the State deliberately delays the trial to hamper the defense, that would weigh heavily against the State, whereas delay due to overcrowded courts generally is weighed less heavily. *Loud Hawk*, 474 U.S. at 315. The Supreme Court has observed that "[g]iven the important public interests in appellate review, it hardly need be said that an interlocutory appeal by the [State] ordinarily is a valid reason that justifies delay." *Id.* (citation omitted). Several factors should be considered in assessing the purpose and reasonableness of an interlocutory appeal by the State: "the strength of the [State's] position on the appealed issue, the importance of the issue in the posture of the case, and—in some cases—the seriousness of the crime," *i.e.*, whether it is "sufficiently serious to justify restraints that may be imposed on the defendant pending the outcome of the appeal." *Id.* at 315, 316. Looking at these factors, the State's interlocutory appeal serves a legitimate purpose and is reasonable. First, the appeal does not appear to be frivolous. That the appeal is not frivolous is reflected by this court's decision to exercise its discretion to entertain the appeal after considering the State's preliminary showing of good cause. *See* NRS 177.015(2) ("The Supreme Court may establish such procedures as it determines proper in requiring the appellant to make a preliminary showing of the propriety of the appeal and whether there may be a miscarriage of justice if the appeal is not entertained."). Second, the appellate issue is significant to the case because the confession is a key piece of evidence. Third, the charged

offense, first-degree murder, is sufficiently serious to justify the restraints that may be imposed on Robles-Nieves pending the outcome of this appeal. We therefore conclude that the reason for the delay (the State's pursuit of this interlocutory appeal) does not weigh heavily against the State.

The third speedy-trial factor—Robles-Nieves' assertion of the right—would seem to present no great difficulty: he promptly asserted his speedy-trial rights at arraignment in district court and has been consistent in objecting to any continuances and stays (even those that would allow the district court to rule on his suppression motion before the trial). The State, however, asserts that the motion to suppress should be treated as an implied waiver of any speedy-trial right for the time required to finally resolve the motion, apparently including the interlocutory appeal. In this, the State equates the motion with a pretrial habeas petition, which by statute (NRS 34.700(1)(b)) must include a waiver of speedy-trial rights. Although the filing of the motion may be viewed as conduct that conflicts with the assertion of the speedy-trial right, *see Loud Hawk*, 474 U.S. at 314-15 (noting that although defendants asserted speedy-trial rights, they also "consumed six months by filing indisputably frivolous petitions for rehearing and for certiorari" and "also filled the District Court's docket with repetitive and unsuccessful motions"), we are not convinced that it necessarily implicates a waiver of speedy-trial rights. In this case, the suppression motion appears to be one of the only motions filed by the defense, it was timely filed, and it cannot be characterized as frivolous given the district court's order granting the motion. Tellingly, the record indicates that Robles-Nieves wanted to proceed to trial and objected to a continuance that would have allowed the judge who heard the suppression motion to make a decision on the motion.

Thus, at worst, the time consumed by the motion weighs against Robles-Nieves, but we will not treat the motion as a waiver of the right.

The final speedy-trial factor—prejudice to the defendant—is assessed in light of the interests that the speedy-trial right was designed to protect: "to prevent oppressive pretrial incarceration," "to minimize anxiety and concern of the accused," and "to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. Robles-Nieves focuses on the first of these concerns—he has been incarcerated for approximately 18 months away from his family. We do not take this concern lightly. It is not, however, the most serious of the interests that the speedy-trial right was designed to protect. The most serious of those interests is to limit impairment to the defense caused by delay. *Id.* There is no suggestion that the delay has impaired the defense.

We must balance all of these speedy-trial factors to determine whether the stay requested by the State will irreparably harm Robles-Nieves by infringing his constitutional right to a speedy trial. On balance, we conclude that there has not been a speedy-trial violation.[3] That balance could change because two of the factors are fluid—the length of the delay and the prejudice to the defendant. By taking an interlocutory appeal and requesting a stay, the State takes the risk that at some point the balance may tip against it. But because the balance has not yet tipped, Robles-Nieves has not demonstrated that granting the stay would result in irreparable injury to him.

---

[3]Of note, the district court denied a defense motion to dismiss based on a speedy-trial violation a few weeks before the State filed its stay motion in this court.

*Irreparable harm based on statutory speedy-trial right*

The asserted harm that will be suffered by Robles-Nieves if a stay is granted also includes the statutory right to a trial within 60 days of arraignment. *See* NRS 178.556(1). We have recognized that the 60-day rule set forth in NRS 178.556 is mandatory only when there is a lack of good cause for the delay. *Huebner v. State,* 103 Nev. 29, 31, 731 P.2d 1330, 1332 (1987). Here, the good cause for the delay mirrors the second of the *Barker* factors (the reason for the delay). The Legislature has determined that the State should have the right to appeal from an order granting a motion to suppress evidence. NRS 177.015(2). That right would be severely limited, if not effectively eliminated, were the delay attributable to such an appeal not considered good cause for purposes of the 60-day rule. We therefore conclude that unless the appeal is frivolous or involves only a tangential issue, the State's interlocutory appeal under NRS 177.015(2) will be regarded as good cause for delay in bringing a defendant to trial. Thus, similar to the constitutional speedy-trial right, Robles-Nieves' statutory right will not be irreparably harmed if the stay is granted.

*Likelihood of success on the merits*

The final consideration in whether to grant the motion for a stay is the likelihood that the State will succeed on the merits. In some circumstances, this stay factor is significant. But in the context of an interlocutory appeal under NRS 177.015(2), we conclude that it is far less significant than the first stay factor. As we have already explained, the first stay factor takes on added significance in the context of an interlocutory appeal from an order granting a suppression motion because denying a stay would effectively eliminate the right to appeal afforded by

NRS 177.015(2). Because the first stay factor weighs heavily in favor of a stay, the final factor will counterbalance the first factor only when the appeal appears to be frivolous or the stay sought purely for dilatory purposes. *Cf. Mikohn Gaming Corp. v. McCrea*, 120 Nev. 248, 253, 89 P.3d 36, 40 (2004) (taking similar approach to stay analysis in interlocutory appeal from order refusing to compel arbitration). We have already observed in the context of the speedy-trial analysis related to the third factor that the appeal here does not appear to be frivolous. Regardless of whether we may ultimately agree with the State or Robles-Nieves on the merits of the suppression issue, there is at least a fair dispute as to whether our decision in *Sheriff, Washoe County v. Bessey*, 112 Nev. 322, 914 P.2d 618 (1996), adopted a rule that the use of extrinsic falsehoods in eliciting a confession is coercive per se. As the district court observed in its order granting the motion, *Bessey* adopted the rationale of another state court that had recognized such a rule but did so in the context of the use of intrinsic falsehoods and no Nevada case addresses extrinsic falsehoods. Under the circumstances, we conclude that this factor does not weigh strongly either way in the stay analysis.

Considering all of the stay factors, we conclude that the first factor is most significant in this case. There has not been a sufficient showing of irreparable harm to Robles-Nieves or that there is not a likelihood of success on the merits to counterbalance that factor—if a stay is denied and the trial commences, the object of the appeal will be defeated as will the purpose of NRS 177.015(2). We therefore grant the State's motion and stay the trial pending resolution of this appeal. In view of the concerns with disrupting a criminal proceeding wherein a defendant has a constitutional and statutory right to a speedy trial, and to the extent our

docket permits, we will expedite appeals from orders granting motions to suppress evidence.

_____, J.
Hardesty

We concur:

_____, C.J.
Pickering

_____, J.
Gibbons

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta