# IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF THE KENT AND JANE WHIPPLE TRUST, DATED MARCH 17, 1969, JANE WHIPPLE, CO-TRUSTEE (ERRONEOUSLY NAMED AS TRUSTEE), AND AMENDMENTS THERETO, JANE WHIPPLE.

No. 69945

FILED

JUN 28 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____S. Young_____
DEPUTY CLERK

WARNER WHIPPLE, CO-TRUSTEE OF THE KENT AND JANE WHIPPLE TRUST, DATED MARCH 17, 1969, AS AMENDED,
Appellant,
vs.
JANE WHIPPLE, CO-TRUSTEE OF THE KENT AND JANE WHIPPLE TRUST, DATED MARCH 17, 1969, AS AMENDED; AND JANE WHIPPLE,
Respondents.

## *ORDER OF REVERSAL AND REMAND*

This is an appeal from a district court order denying a motion to compel arbitration. Seventh Judicial District Court, Lincoln County; Steve L. Dobrescu, Judge.

Respondent Jane and her husband, Kent Whipple, were the trustors of the Kent & Jane Whipple Trust, dated March 17, 1969 (the Trust), amended on January 30, 1977. During their mutual lifetimes, Jane and Kent were to be paid in installments the net income of the Trust by the trustee. However, upon Kent's death, the Trust assets were to be divided into two sub-trusts, Sub-trust A and Sub-trust B.

17-21540

Sub-trust A was designated the survivor's trust to provide income to Jane, to be funded with Jane's share of the trustors' community property. Sub-trust B was to provide for the trustors' children and was to be funded with all Trust property not transferred into Sub-trust A. The Trust required that if one of the trustors died before the other, both sub-trusts were to be jointly administered by Co-Trustees, one of whom was to be the surviving spouse, the second co-trustee to be Keith Whipple. The Trust also included provisions regarding the cooperation of the Co-Trustees in the management of all Trust assets and included arbitration of disputes between the Co-Trustees.

Kent Whipple died on February 5, 1977. Following Kent's death, the Trust acquired water right permits from the State Engineer. A portion of those water right permits were conveyed by the Trust to the Kent Whipple Ranch, LLC (Kent Whipple Ranch). In January 2015, the Kent Whipple Ranch applied to the State Engineer to change the point of diversion, place of use, and manner of use of a portion of one of those water right permits. Betsy Whipple, a remainder beneficiary of Sub-trust B, protested the application, claiming that the ownership was questionable and that the assets belonged to the Trust, not Kent Whipple Ranch; that Jane Whipple, as trustee of the Trust, did not have authority to make the application; and that the assets acquired were a part of Sub-trust B. Based on the protest, the State Engineer stayed consideration of the Kent Whipple Ranch application pending determination of the ownership rights in the water right permits.

On August 28, 2015, Keith Whipple formally resigned as Co-Trustee. Pursuant to the terms of the Trust, as modified by an earlier district court order, appellant Warner Whipple was to be the successor

trustee to Keith Whipple. In an affidavit dated October 7, 2015, Warner stated that he previously accepted his position as successor Co-Trustee pursuant to the earlier November 16, 1987, district court order and further confirmed his acceptance of appointment as successor Co-Trustee.

Jane filed a petition for declaratory relief with the district court, dated August 31, 2015, requesting a declaration that the Trust was the owner of the water right permits and that Jane has the absolute authority to manage and sell them. In two letters sent to Jane by Warner's counsel, dated October 8, 2015, and November 6, 2015, respectively, Warner notified Jane that he disagreed with and disputed the contents of her petition for declaratory relief. Warner further argued that arbitration was necessary under the terms of the Trust.

On November 24, 2015, Warner filed a motion to dismiss the petition, or in the alternative, to stay the petition, and to compel arbitration, based on the arbitration provision in the Trust.[1] Jane opposed the motion, and Warner later filed a reply. The district court denied Warner's motion, finding that Warner's disagreements concerned actions taken before resignation of Warner's predecessor Co-Trustee and that a trustee's authority under a trust is a question of law and is not subject to arbitration under the terms of the Trust.

---

[1]Although Warner's motion was initially characterized as a motion to dismiss, the record suggests that it was actually a motion to stay the proceedings pending arbitration. Indeed, in Warner's reply in support of the motion to compel, he states "[a]lthough the Motion is styled as a Motion to Dismiss or to Stay Proceedings, . . . the appropriate procedural course is to stay the Petition, pending arbitration, not dismiss it." Therefore, we analyze this case in the context of a motion to compel arbitration, and not a motion to dismiss.

On appeal, Warner argues that the district court erred by concluding that the issues in this case are not subject to the arbitration provision contained in the Trust. We agree. Due to the extremely broad language in the Trust, we hold that it encompasses the issues in the present case and that the district court erred by denying the motion to compel arbitration.[2]

*The district court erred by concluding that the issues in this case are not subject to the arbitration provision contained in the Trust*

Warner argues that the district court erred by denying the motion to compel arbitration because "[t]he arbitration clause in the Trust is extremely broad, requiring disagreements between the Co-Trustees" to be arbitrated regardless of the nature of the dispute.

Conversely, Jane argues that because "the relief sought was merely a judicial declaration regarding the legal consequences of property transfers made by the trustees prior to Warner Whipple becoming co-trustee," the relief sought does not implicate a dispute between Jane and Warner. Jane further argues that "a Trustee seeking declaratory relief regarding the legal meaning (and scope) of their powers under the Trust does not involve any dispute subject to arbitration . . . [because] any disagreement over that issue is not a disagreement about an 'act' of the Trustee under the terms of the Trust."

*The dispute at issue falls under the broad scope of the arbitration provision in the Trust*

---

[2]Because this issue is dispositive, we need not reach the additional issues raised in Warner's appeal.

A district court's order denying a motion to compel arbitration is reviewed de novo. *See Clark Cty. Pub. Emps. Ass'n v. Pearson,* 106 Nev. 587, 590, 798 P.2d 136, 137 (1990).

This court determines whether a dispute is arbitrable based on the plain language of the arbitration provision at issue. *See Masto v. Second Judicial Dist. Court,* 125 Nev. 37, 44-45, 199 P.3d 828, 832-33 (2009) (holding that "[w]hether a dispute arising under a contract is arbitrable is a matter of contract interpretation" and that "[i]n interpreting a contract, [this court] construe[s] a contract that is clear on its face from the written language, and should be enforced as written"). Where there is an agreement to arbitrate, disputes will be presumed arbitrable. *Phillips v. Parker,* 106 Nev. 415, 417, 794 P.2d 716, 718 (1990). Additionally, "Nevada courts resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration." *Truck Ins. Exch. v. Palmer J. Swanson, Inc.,* 124 Nev. 629, 633, 189 P.3d 656, 659 (2008) (internal quotation marks omitted).

> The arbitration provision in the Trust provides that
>
> [i]n the event of *a disagreement at any time* when there are only two (2) Co-Trustees, then the dispute *shall* be submitted to arbitration in accordance with the Uniform Arbitration Act of the State of Nevada.

(Emphases added).

In *Masto v. Second Judicial District Court,* the arbitration clause at issue provided that "any dispute, controversy or claim arising out of or relating to calculations . . . or any determinations made by, the [i]ndependent [a]uditor . . . shall be submitted to binding arbitration." 125 Nev. at 44, 199 P.3d at 832 (internal quotation marks omitted). This court characterized the

arbitration clause as broad in scope, and thus, mandated arbitration of a dispute "concerning a state's diligent enforcement of" a statute because it related to calculations or determinations made by the independent auditor. *See id.* at 45-47, 199 P.3d at 833-34.

Multiple courts have similarly interpreted such arbitration provisions broadly. For example, In *Simula, Inc. v. Autoliv, Inc.*, the United States Court of Appeals for the Ninth Circuit broadly interpreted an arbitration clause covering "[a]ll disputes arising in connection with [an] [a]greement" between an investor of air bag systems and a supplier of components. 175 F.3d 716, 720-21 (9th Cir. 1999) (ordering arbitration of plaintiff's antitrust, trademark, trade secret and defamation claims). The Ninth Circuit reasoned that the arbitration language "reache[d] every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Id.* at 721.

Similarly, in *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, the United States Court of Appeals for the Fourth Circuit held that an arbitration agreement providing that "[a]ll disputes arising in connection with the present contract shall be finally settled" by arbitration was sufficiently broad in scope to include claims for civil conspiracy, unfair trade practices, libel, and defamation, among other things. 863 F.2d 315, 316-17, 321 (4th Cir. 1988). The Fourth Circuit reasoned that "[t]he recommended clause does not limit arbitration to the literal interpretation or performance of the contract. It embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Id.* at 321. In *Coors Brewing Co. v. Molson Breweries*, the United States Court of Appeals for the Tenth Circuit ruled

SUPREME COURT
OF
NEVADA

(O) 1947A

6

that an arbitration clause covering "[a]ny dispute arising in connection with the implementation, interpretation or enforcement" of an agreement was sufficiently broad to cover antitrust disputes between the parties. 51 F.3d 1511, 1513, 1515 (10th Cir. 1995) (internal quotation marks omitted). The Tenth Circuit reasoned that, among other things, the public policy in favor of arbitration compelled it to include the antitrust disputes within the scope of the arbitration clause. *See id.* at 1515.

Here, the language in the arbitration provision is even broader than in these cases. The language mandates arbitration "in the event of *a disagreement at any time* when there are only two (2) Co-Trustees[.]" (Emphasis added.) Thus, it is not limited in terms of legal versus factual disputes, nor is it limited to acts performed by the trustees. Moreover, it is not limited to disputes arising after the trustee was appointed. Because the language in the present arbitration agreement is even broader than the arbitration provisions in these cases, and because the Supreme Court has mandated that "ambiguities as to the scope of the arbitration clause . . . [be] resolved in favor of arbitration," we hold that the present dispute between the parties falls under the arbitration provision's broad language.[3] *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior*

---

[3]In *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, the Ninth Circuit found a clause in an agreement requiring arbitration of "any disputes . . . arising hereunder" to be more limited than a clause requiring arbitration of disputes "relating to" an agreement. 708 F.2d 1458, 1463-64 (9th Cir. 1983). In the present case, the word "hereunder" appears in the line preceding the arbitration provision in the Trust. Specifically, it reads: "The concurring vote of two (2) Co-Trustees shall be necessary for the Trustees *to act hereunder,* when there are two (2) Co-Trustees." (Emphasis added.) Although she does not cite to any authority, Jane argues that this means that the arbitration provision is limited to "acts

*continued on next page...*

SUPREME COURT
OF
NEVADA

(O) 1947A

*Univ.*, 489 U.S. 468, 476 (1989); *see also Truck Ins. Exch.*, 124 Nev. at 633, 189 P.3d at 659.

Accordingly, the district court erred by denying Warner's motion to compel arbitration. Therefore, we ORDER the judgment of the district court REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

cc: Hon. Steve L. Dobrescu, District Judge
Eva Garcia-Mendoza, Settlement Judge
Bingham Snow & Caldwell
Justice Law Center
Lincoln County Clerk

------

*...continued*
under the Trust," and excludes acts "beyond the trust." However, Jane's argument is unpersuasive. The phrase "hereunder" does not appear in the actual arbitration provision. It is limited to the section of the Trust concerning the votes necessary for the Co-Trustees to perform an act.

SUPREME COURT
OF
NEVADA

(O) 1947A